

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00018-CV
_____


IN THE INTEREST OF E.W., A CHILD


On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 80,358


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

The Texas Department of Family and Protective Services (the Department) filed a petition to terminate Anna Black's and Jim Black's parental rights to two-year-old Ethan Black.[1]

After a very brief trial[2] during which very little evidence was presented, the trial court, reciting that the ruling was at least partially based on the court's "judicial knowledge" of the case, found that the Department proved the following by clear and convincing evidence: (1) that Anna and Jim knowingly placed or knowingly allowed Ethan to remain in conditions or surroundings which endangered Ethan's physical or emotional well-being; (2) that Anna and Jim engaged in conduct or knowingly placed Ethan with persons who engaged in conduct which endangered his physical or emotional well-being; (3) that Anna and Jim each failed to comply with the provisions of a court order that established the actions necessary for them to obtain Ethan's return after he was left in conservatorship of the Department for not less than nine months as a result of his removal for abuse or neglect; and (4) that termination of Anna's and Jim's parental rights was in Ethan's best interest. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O), (2) (West 2014). On appeal, both Anna and Jim argue that the evidence was legally and factually insufficient to support the trial court's findings. In addition, Anna argues that the trial court erred in granting the termination based on a Rule 11 Agreement (the Agreement) into which she entered with the Department despite her recantation or revocation of it. We concur with Anna and Jim's point on

---

[1]To protect the confidentiality of the child involved, this Court will refer to all involved parties by fictitious names. *See* TEX. R. APP. P. 9.8(b)(C)(2).

[2]Exclusive of the title page, index, and certification page, the reporter's record from the final hearing is less than thirty pages long. No exhibits were introduced at the hearing.

appeal regarding the sufficiency of the evidence and reverse the trial court's judgment, remanding the case to the trial court for a new hearing.

## I.    Applicable Statutory Law

The pertinent law regarding termination is Section 161.001 of the Texas Family Code, which sets out the grounds upon which a termination can take place. Much of the discussion centers on subsection (1), grounds (D), (E), and (O) of that Section, and it is worthwhile to recite the basics of these grounds in order to permit the reader to more readily follow a recitation of the proceedings.

Subsection (1)(D) permits a termination when the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(D).

Subsection (1)(E) permits a termination when the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E).

Subsection (1)(O) permits a termination when the parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O).

## II.    Standard of Review

We strictly scrutinize termination proceedings in favor of the parent. *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). To terminate an individual's parental rights to his child, the trial court must find, by clear and convincing evidence, both of the following statutory requirements (1) that the parent has engaged in one of the statutory grounds for termination and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). The "clear and convincing" burden of proof is a greater burden than a "preponderance of evidence" but less than "beyond a reasonable doubt"; it has been defined as "'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *C.H.*, 89 S.W.3d at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)); TEX. FAM. CODE ANN. § 101.007 (West 2014). Due process demands this heightened standard. *E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

In a legal sufficiency review, termination findings are given deference. *J.F.C.*, 96 S.W.3d at 266; *Smith v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 679 (Tex. App.—Austin 2005, no pet.). In such cases, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder could reasonably have formed a firm belief or conviction that the grounds for termination were proven. *E.N.C.*, 384 S.W.3d at 802 (citing *J.F.C.*, 96 S.W.3d at 266); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349

4

S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.).  We "'assume that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so.'"  *E.N.C.*, 384 S.W.3d at 802 (quoting *J.F.C.*, 96 S.W.3d at 266); *J.P.B.*, 180 S.W.3d at 573.  Conversely, we disregard evidence that the fact-finder may have reasonably disbelieved or testimony from witnesses whose credibility may reasonably be doubted.  *E.N.C.*, 384 S.W.3d at 802 (citing *J.F.C.*, 96 S.W.3d at 266); *J.P.B.*, 180 S.W.3d at 573.

The inquiry made by a reviewing court in a factual sufficiency review is "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . allegations."  *C.H.*, 89 S.W.3d at 28; *J.L.B.*, 349 S.W.3d at 846.  If, in weighing disputed evidence, the fact-finder could have reasonably resolved the conflicts to form a firm conviction that the allegations concerning the grounds for termination were true, then the evidence is factually sufficient, and the termination findings must be upheld.  *C.H.*, 89 S.W.3d at 18–19; *see J.F.C.*, 96 S.W.3d at 266.  In applying this standard in light of the clear and convincing standard, we must be careful not to "'be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt.'"  *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

"Only one predicate finding under Section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."  *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.); *see In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.).  "'If multiple predicate grounds are found by the trial court, we will affirm based on any one ground

5

because only one is necessary for termination of parental rights.'" *K.W.*, 335 S.W.3d at 769 (quoting *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.)).

## III. Factual Background: The Evidence

As a result of a settlement conference, Anna signed the Agreement in which (1) the Department agreed to seek termination under ground (O), and (2) Anna agreed not to challenge the Department's request to terminate her parental rights under ground (O).[3] Besides any other motivation for Anna to enter into this agreement, the agreement promised her that after the termination, she would receive the right to receive photographs and bi-annual updates regarding Ethan's well-being and that she would be allowed to communicate with Ethan and send him gifts. The Agreement, signed by Anna and her attorney, clearly informed Anna that it was not subject to revocation.[4]

At the final hearing, held on December 14, 2014,[5] the Department's caseworker, Judy Wheeler, testified that the case had recently been transferred to her and that although she had looked at the Department's family service plan, she was "not remembering all that was on the

---

[3]Anna was pregnant at the time of the final hearing. A finding that a parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of [ground] (D) or (E)" is a separate ground supporting termination of parental rights. TEX. FAM. CODE ANN. § 161.001(1)(M). This could have been the motivation for Anna to forego a challenge to the termination under ground (O).

[4]Although the Agreement recites that it was entered into pursuant to Section 153.0071 of the Texas Family Code, which governs agreements entered into as a result of court-ordered arbitration or mediation, the record reflects that the Agreement was executed during a simple settlement conference and was not the result of court-ordered arbitration or mediation. *See* TEX. FAM. CODE ANN. § 153.0071 (West 2014).

[5]It is worthwhile to note that the Texas Family Code supplies motivation for courts to proceed to termination of the parent/child relationship within one year of the date that the Department is first appointed managing conservator of the child. *See* TEX. FAM. CODE ANN. § 263.401 (West 2014). The first order appointing a managing conservator for the child the subject of this suit was entered February 17, 2014.

service plan at [that] time." Wheeler testified that Anna had "worked some of her services," but that she was "not up to date on all the services that [Anna] completed." Nevertheless, Wheeler testified that Anna had not completed the family service plan in a timely manner. Despite the Agreement by Anna to not challenge the termination based on ground (O), both Wheeler and the Department also recommended that Anna's parental rights be terminated on grounds (D) and (E).

With respect to Jim, Wheeler admitted that she did not know "specifically all the services that [he had] done or not done." She testified that Jim had enrolled in a batterer's intervention and prevention program, but that, to her knowledge, he was not completing the rest of his family service plan. When questioned later, Wheeler stated unequivocally that Jim had not completed his family service plan. Both Wheeler and the Department recommended that Jim's parental rights be terminated on grounds (D) and (E).

Celeste Prather, the Court-Appointed Special Advocate (CASA) appointed for Ethan, testified that Anna and Jim had "worked their services minimally." Prather said that Jim had recently expressed his desire to adhere to the family service plan, but that his willingness to follow the plan came "very late in the game." Prather testified that Jim's and Anna's services through the Department were supposed to start in February 2013. Yet, the reporter's record establishes that the terms of the family service plan were not created until March 2014 and that the target date for completing the classes and treatment programs was February 14, 2015. Because Jim had two months remaining under the family service plan to complete its mandates, Prather recommended that Jim's parental rights be terminated only under grounds (D) and (E). Because Anna had signed

7

the Agreement, Prather recommended that her parental rights be terminated under ground (O) but not grounds (D) and (E).

With respect to Ethan's best interests, Wheeler advised that Ethan was in foster care, that his needs were being met, that he had bonded with the foster family, and that the foster family wanted to adopt him. Prather testified that termination of Anna's and Jim's parental rights was in Ethan's best interests.

Anna, who was seventeen at the time of trial, admitted that she had signed the Agreement, but wanted to revoke it.[6] She stated, "I felt I didn't have no choice but to sign it and that I was pushed into it." Despite Anna's attempt to recant the Agreement, the trial court's orders following a temporary hearing required Anna to comply "with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit." Both the trial court's temporary orders and Anna's service plan required her to (1) "attend and participate in a psychiatric evaluation and follow the recommendations of that evaluation at Lakes Regional MHMR," (2) "complete a drug and alcohol assessment and follow all recommendations located at Lakes Regional MHMR," (3) "attend and participate in a Women In Need Domestic Violence Program," (4) successfully complete parenting classes, and (5) "maintain stable income through the pendency of the case." At trial, Anna admitted that she still had not completed the MHMR parenting or domestic violence classes as required by the agreement.

---

[6]Anna was a minor at the time she signed the Agreement. However, she was married to Jim. Section 1.104 of the Texas Family Code states, "Except as expressly provided by statute or by the constitution, a person, regardless of age, who has been married in accordance with the law of this state has the capacity and power of an adult, including the capacity to contract." TEX. FAM. CODE ANN. § 1.104 (West 2006).

By order, the trial court also required Jim to comply with each requirement set out in the Department's family service plan. Both the trial court's temporary orders and Jim's family service plan required him to, among other things, (1) successfully complete parenting class, (2) "successfully complete a Batter's [sic] Intervention and Prevention Program (BIPP)," and (3) "maintain stable income through the pendency of the case." At the final hearing, Jim testified that he had completed all of his services except for the parenting class and the BIPP (in which he was then currently enrolled). When asked why he had not completed all of his services, Jim replied that he was initially unable to pay the requisite fees in order to begin the BIPP, but had since done so. He also testified, "I also thought that I had until February 14, because they said a year. And today is not no year. It's two months shy."

With respect to the termination grounds set out in Section 161.001(1)(D) and (E) of the Texas Family Code, Jim was asked if there was a history of family violence between Anna and him. Jim testified, "Well, it's said, but true, no? Maybe verbally, like arguing, yelling, name calling. Nothing physical." From Anna, the Department only elicited the following:

> Q.   Now we heard [Jim] testify that there's never been any acts of domestic violence. Have you ever said something different to anybody?
>
> A.   I have.
>
> Q.   Okay. When and who was that to? Was that to Wanda?
>
> A.   Uh-huh.
>
> Q.   And when were those acts of domestic violence?
>
> A.   They were said out of anger.

Q.    Okay.    And that's why you're also taking or doing services pertaining to domestic violence, is that correct?

A.    Yes.

Q.    And he also testified about – [Jim] smoking meth [sic] to Wanda, is that correct?

A.    Yes.

Although Anna had previously expressed an intention to terminate her relationship with Jim, at the time of trial, Anna was then once again pregnant with another child by him and, according to Jim, was living with him at his mother's house.  Jim testified that he was then currently unemployed and had no vehicle of his own, although he could use his mother's vehicle.  No testimony established Anna's employment status.  In order to make "a little bit of money," Jim cut and sold firewood.

Because the time to complete the family service plan established for them by the Department had not expired, both parents asked the trial court for an extension of time in which to complete the plan.  As an alternative to receiving an extension to complete the Department's plan, Anna's counsel asked the trial court to follow the Agreement if it was inclined to terminate Anna's parental rights.  Pursuant to the parties' request that the trial court take judicial notice of the contents of its file, the trial court "having taken judicial knowledge of the file," ruled as follows:

> [T]he court is going to find that as to the mother . . . that the department has proved their allegations by clear and convincing evidence.  That she – her parental rights should be terminated based on grounds D and E.
> And in the alternative, based on the Rule 11 agreement, the – which the court is going to decline to set aside, that under – that her rights should be – parental rights should be terminated under provision O, as called for under the Rule 11 agreement.

10

> But the court's going to find that even if the Rule 11 agreement is – is invalid, it should not be upheld, that based on clear and convincing evidence that grounds D and E have been proven. And so for the purposes of the record, her parental rights are terminated based on D, E and O.
>
> The court makes a finding that the termination of her parental rights is in the child, [E.W.'s], best interest.
>
> As far as the father, . . . once again, the court finds that the department has proved the allegations of D and E – paragraphs D and E. That his parental rights should be terminated based on those grounds and the termination of his parental rights are [sic] in the child's best interest.

Anna and Jim filed a motion for new trial. At a February 13, 2015, hearing regarding that motion, Jim testified that he was still attending BIPP, but had yet to complete the program. His testimony also established that another child, Christian Black, had been born to Anna after the final hearing but before the hearing on the motion for new trial, and that the Department had already removed the child from her custody. Jim testified that he was not yet employed, but was doing "some LED work on a car."

## IV.    The Department Introduced No Evidence to Support Grounds (D) and (E)

Despite the terms of the Agreement (wherein the Department agreed to seek termination under Section 161.001(1)(O) of the Texas Family Code), the Department instead recommended that the trial court terminate Anna's parental rights under grounds (D) and (E). The trial court found that the Department had met its burden on these grounds as to both Anna and Jim by clear and convincing evidence. In fact, the testimony in this case indicates that the Department had already removed Anna and Jim's second child, Christian, via a separate suit. (A finding that a parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of [ground] (D) or (E)" is a separate ground

11

supporting termination of parental rights.[7] TEX. FAM. CODE ANN. § 161.001(1)(M).) Accordingly, we review whether the Department met its burden with respect to grounds (D) and (E).

Ground (D) "requires a showing that the environment in which the child is placed poses a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent." *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.) (footnote omitted); (citing *In re L.C.*, 145 S.W.3d 790, 795–96 (Tex. App.—Texarkana 2004, no pet.)). Ground (E) requires evidence of "'a voluntary, deliberate, and conscious course of conduct by the parent'" establishing that the parent has engaged in conduct which endangers the physical or emotional well-being of the child. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)). Both grounds require a showing of endangerment, which "'means to expose to loss or injury.'" *Id.* (quoting *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.)). "'To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct.'" *Id.* (quoting *Perez*, 148 S.W.3d at 436). "'The specific danger to

---

[7]At the final hearing, the Department questioned Anna in the following manner:

> Q.   Are you currently pregnant?
> A.   Yes.
> Q.   Who's the father of the child?
> A.   [Jim].
> Q.   So you understand that if he gets terminated on D and E grounds, that CPS will have the legal right to take that child. Do you understand that?
> A.   Yes.

the child's well-being need not be established as an independent proposition, but may be inferred from parental misconduct.'" *Id.* (quoting *Perez*, 148 S.W.3d at 436).

Here, our review of the reporter's record establishes that no evidence was introduced to support termination under either ground (D) or (E). Both Jim and Anna denied any act of domestic violence except for statements "said out of anger." There was no other testimony establishing an alleged act of domestic violence that supposedly endangered Ethan, or the timeframe in which the alleged act or acts occurred. While the Department argues that Anna made statements to a previous caseworker that Jim had smoked methamphetamine at some point in his life, our review of the transcript, which we recited above, does not establish such a fact.[8]

We note that the Department's brief does not argue that the evidence was legally and factually sufficient to support termination under either ground (D) or (E). Yet, the Department points to statements made in affidavits and reports filed in the clerk's record, of which the trial court stated it was taking judicial notice, to support its rendition of the facts and its argument that the termination of Anna's and Jim's parental rights was in Ethan's best interests. The Department's reliance on the concept of judicial notice is misplaced here.

Pleadings are not evidence. Further, "instruments attached to pleadings are not evidence unless they are introduced as such." *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 725 (Tex. App.—San Antonio 2004, no pet.); *Am. Fire & Indem. Co. v. Jones*, 828 S.W.2d 767, 769 (Tex.

---

[8]*See* TEX. FAM. CODE ANN. § 161.001(1)(P) (trial court may terminate parental rights on finding that Department proved, by clear and convincing evidence, that parent "used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child").

App.—Texarkana 1992, pet. denied). Rule 201 of the Texas Rules of Evidence, governing a trial court's ability to take judicial notice of an adjudicative fact, states:

> **(a)** **Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
>
> **(b)** **Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> > **(1)** is generally known within the trial court's territorial jurisdiction; or
> >
> > **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

TEX. R. EVID. 201. "Accordingly, while the trial court can take judicial notice of the *existence* of certain documents in its records, it 'may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file.'" *Kenny v. Portfolio Recovery Assocs., LLC*, No. 01-14-00058-CV, 2015 WL 1135410, at *3 (Tex. App.—Houston [1st Dist.] Mar. 12, 2015, no pet.) (citing *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.)); *see B.L.M. v. J.H.M.*, *III*, No. 03-14-00050-CV, 2014 WL 3562559, at *11 (Tex. App.—Austin July 17, 2014, pet. denied) (mem. op.) ("'Further, while a court may judicially notice the existence of an affidavit in its file, it may not take judicial notice of the truth of the factual contents contained therein.'") (quoting *Davis v. State*, 293 S.W.3d 794, 797–98 (Tex. App.—Waco 2009, no pet.)); *In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.).

The trial court specifically stated that it was relying on its own "judicial knowledge" of the case in terminating Anna's and Jim's parental rights under grounds (D) and (E) of Section 161.001(1) of the Texas Family Code. We have no doubt that the trial court may have been well

14

acquainted through previous dealings with the parties with facts that may have supported termination on one of these grounds. However, "[i]t is . . . 'inappropriate for a trial judge to take judicial notice of testimony even in a retrial of the same case.'" *B.L.M.*, 2014 WL 3562559, at *11 (quoting *Guyton*, 332 S.W.3d at 693). "'In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence.'" *Id*. (quoting *Guyton*, 332 S.W.3d at 693). Thus, "[a] trial judge may not even judicially notice testimony that was given at a temporary hearing in a family law case at a subsequent hearing in the same cause without admitting the prior testimony into evidence.'" *Id*. at *12 (quoting *Davis*, 293 S.W.3d at 797–98). The Department admitted no such transcripts into evidence at this termination hearing, and none were included in the clerk's record.

Simply put, there was no evidence to support the trial court's finding that the Department proved the existence of either ground (D) or ground (E) by clear and convincing evidence. We sustain Anna's and Jim's first point of error.

## V.     The Evidence Is Not Factually Sufficient to Support the Ground (O) Findings

In the Agreement, although Anna consented to raise no contest to termination under Section 161.001(1)(O) of the Texas Family Code, she did not agree that the Department's allegations pursuant to that ground for termination were true. Despite the part of the Agreement that said the Agreement was irrevocable, Anna attempted to revoke her acquiescence to termination under ground (O). On appeal, Anna argues that the trial court erred in enforcing the Agreement after she said that she had revoked her Agreement not to contest termination based on

15

that ground. Although the trial court stated that it declined to set the Agreement aside, its final judgment makes no mention of the Agreement, and the terms of the judgment do not incorporate anything requiring Ethan's placement to allow Anna to contact the child in writing, to send the child gifts, and to receive periodic photographs and updates on Ethan's well-being. The Department states that

> the order of termination determined by clear and convincing evidence that Anna's rights should be terminated pursuant to subsection (O), with no mention of the rule 11 agreement. This renders Anna's argument regarding the rule 11 agreement completely moot, as the final order entered was based on the evidence presented at trial, and not on the rule 11 agreement.

We need not address Anna's argument that she had the ability to revoke the Agreement.[9] Under the Agreement, Anna did not consent to the termination under any of the statutory grounds; rather, she only agreed to not contest termination under ground (O). Therefore, despite the existence of the Agreement, the Department still had the burden of proving the statutory ground for termination.

> Ground (O) requires the Department to prove that a parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O).[10]

---

[9]For a discussion of similar issues. *See In re M.A.H.*, 365 S.W.3d 814, 819–20 (Tex. App.—Dallas 2012, no pet.).

[10]Although the trial court did not state that it was terminating Jim's parental rights on a finding of ground (O) at the final hearing, the written judgment included ground (O) as a basis of termination of Jim's parental rights. "When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls." *In re M.L.S.*, No. 11-12-00042-CV, 2012 WL 2371042, at *1 (Tex. App.—Eastland June 21, 2012, no pet.)

With respect to both Anna and Jim, the Department argues that it met its burden under ground (O) by citing to evidence that they had not yet completed the terms of their service plans.[11] However, no one testified that Ethan was removed due to either the abuse or the neglect of Ethan by Anna or Jim; as explained above, the trial court was permitted to take judicial notice of nonadjudicative facts included in neither the Department's pleadings, affidavits, or reports, nor the evidence adduced in previous hearings.[12]  *See J.E.H.*, 384 S.W.3d at 870 (finding that, because the

---

(mem. op.) (although trial court's oral pronouncement only included findings that appellant's parental rights should be terminated based on Section 161.001(1)(D), (E), (O), and (P), written judgment also included finding that her rights should be terminated under subsection (R)); *see also In re A.S.G.*, 345 S.W.3d 443, 448 (Tex. App.—San Antonio 2011, no pet.))

[11]We note that the trial court's orders did not set a date by which Anna and Jim were to complete the Department's family service plan and that the plan had a target date of February 14, 2015—two months after the final hearing was held (no one contends that Jim and Anna were unaware of the dates of the final hearing).  Because no one testified how long it would take for Anna and Jim to complete the missing requirements, it was entirely possible that Anna and Jim would have been able to complete the plan within the target date.  The Department argues that some of Anna's and Jim's obligations, such as the requirement to "maintain stable, safe, and appropriate housing," and "maintain stable income" were ongoing requirements.  Although there was testimony that Jim was unemployed during the final hearing and the hearing on the motion for new trial, it would have been better practice for the Department to establish what income was available to the couple or whether they had failed to maintain stable and appropriate housing.

[12]We recognize that "a trial court may take judicial notice of its previous orders and findings of fact from the same case." *In re A.O.*, No. 04-12-00390-CV, 2012 WL 5507107, at *3 (Tex. App.—San Antonio Nov. 14, 2012, no pet.) (mem. op.).  Here, had any of the trial court's previous orders established that Ethan was removed for abuse or neglect, as defined under Section 261.001 of the Texas Family Code, our disposition would be different.  The Texas Family Code defines the terms "abuse" and "neglect" as follows:

 (1) "Abuse" includes the following acts or omissions by a person:

  (A) mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning;

  (B) causing or permitting the child to be in a situation in which the child sustains a mental or emotional injury that results in an observable and material impairment in the child's growth, development, or psychological functioning;

  (C) physical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent,

guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm;

        (D)     failure to make a reasonable effort to prevent an action by another person that results in physical injury that results in substantial harm to the child;

        (E)     sexual conduct harmful to a child's mental, emotional, or physical welfare . . . ;

        (F)     failure to make a reasonable effort to prevent sexual conduct harmful to a child;

        (G)     compelling or encouraging the child to engage in sexual conduct . . . ;

        (H)     causing, permitting, encouraging, engaging in, or allowing the photographing, filming, or depicting of the child if the person knew or should have known that the resulting photograph, film, or depiction of the child is obscene as defined by Section 43.21, Penal Code, or pornographic;

        (I)     the current use by a person of a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner or to the extent that the use results in physical, mental, or emotional injury to a child;

        (J)     causing, expressly permitting, or encouraging a child to use a controlled substance as defined by Chapter 481, Health and Safety Code;

        (K)     causing, permitting, encouraging, engaging in, or allowing a sexual performance by a child as defined by Section 43.25, Penal Code; or

        (L)     knowingly causing, permitting, encouraging, engaging in, or allowing a child to be trafficked in a manner punishable as an offense under Section 20A.02(a)(5), (6), (7), or (8), Penal Code, or the failure to make a reasonable effort to prevent a child from being trafficked in a manner punishable as an offense under any of those sections.

        . . . .

(4)     "Neglect" includes:

        (A)     the leaving of a child in a situation where the child would be exposed to a substantial risk of physical or mental harm, without arranging for necessary care for the child, and the demonstration of an intent not to return by a parent, guardian, or managing or possessory conservator of the child;

        (B)     the following acts or omissions by a person:

                (i)     placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in bodily injury or a substantial risk of immediate harm to the child;

18

(ii)      failing to seek, obtain, or follow through with medical care for a child, with the failure resulting in or presenting a substantial risk of death, disfigurement, or bodily injury or with the failure resulting in an observable and material impairment to the growth, development, or functioning of the child;

(iii)     the failure to provide a child with food, clothing, or shelter necessary to sustain the life or health of the child, excluding failure caused primarily by financial inability unless relief services had been offered and refused;

(iv)     placing a child in or failing to remove the child from a situation in which the child would be exposed to a substantial risk of sexual conduct harmful to the child; or

(v)      placing a child in or failing to remove the child from a situation in which the child would be exposed to acts or omissions that constitute abuse under Subdivision (1)(E), (F), (G), (H), or (K) committed against another child; or

(C)      the failure by the person responsible for a child's care, custody, or welfare to permit the child to return to the child's home without arranging for the necessary care for the child after the child has been absent from the home for any reason, including having been in residential placement or having run away.

TEX. FAM. CODE ANN. § 261.001(1), (4) (West 2014).  Here, the trial court issued a temporary emergency order under Section 262.104 and a temporary order under Section 262.201, which contained the following findings:

2.2.1.    [T]here is a continuing danger to the physical health or safety of the child if the child is returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian who is presently entitled to possession of the child;

2.2.2.    Continuation of the child in the home would be contrary to the child's welfare; and

2.2.3.    Reasonable efforts consistent with the circumstances and providing for the safety of the child, were made to prevent or eliminate the need for removal of the child. . . .

Having examined and reviewed the Department's pleadings and the sworn affidavit accompanying the petition and based upon the facts contained therein and the evidence presented to this Court at the hearing conducted on this date, the Court finds there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the children [sic] which was caused by an act or failure to act of the person entitled to possession.  The Court further finds that it is contrary to the welfare of the child . . . to remain in the home, and; (2) the urgent need for protection required the immediate removal of [the child] and reasonable efforts consistent with the circumstances and providing for the safety [of the child], were made to eliminate or prevent the removal [of the child]; and (3) reasonable efforts have been made to enable [the child] to return home, but there is a substantial risk of a continuing danger if [the child is] returned home.

See TEX. FAM. CODE ANN. §§ 262.104, 262.201 (West 2014).  Section 262.104 authorizes removal of a child "on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child." TEX. FAM. CODE ANN. § 262.104(a)(1). "The term 'immediate danger' insinuates the potential for harm yet to come, as opposed to harm that has already occurred.  Thus,

trial court could not take judicial notice of nonadjudicative facts, no evidence supported the trial court's finding under ground (O) since nothing established that the child was removed due to abuse or neglect). Accordingly, we find that the evidence introduced at the final hearing was insufficient to support termination under ground (O). *See id*. at 871.

## VI. The Best-Interest Findings Are Not Supported by Factually Sufficient Evidence

Anna and Jim also challenge the trial court's finding that termination of their parental rights was in Ethan's best interests.

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet). (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

In determining the best interests of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

---

removal due to the prospect of future harm is not evidence that anyone has already suffered harm or injury." *Vidaurri v. Ensey*, 58 S.W.3d 142, 147 (Tex. App.—Amarillo 2001, no pet.). Likewise, the trial court's finding that there "was a danger," without more, cannot equate to a finding that abuse or neglect had occurred under Section 261.001.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2015).

Because Ethan was only two years old at the time of the final hearing, there was (understandably) no evidence of his desires. "A lack of evidence does not constitute clear and convincing evidence." *E.N.C.*, 384 S.W.3d at 808. As to the second *Holley* factor listed above, although there was evidence that Jim was currently unemployed and had difficulty paying the BIPP fee, nothing established that Ethan's emotional and physical needs differed in any respect to that of other children of his age or that his needs would go unmet if he were to reside with Anna and Jim.[13] *See id.* at 807–08. With respect to the third factor, the Department failed to introduce any evidence that Anna or Jim posed an emotional or physical danger to the child—either at the time of the hearing or in the future. There was also no evidence of the fourth *Holley* factor (the lack of the parental abilities held by Anna and Jim), the seventh factor (the stability of the home provided by Anna and Jim), or the eighth factor (acts or omissions by Anna and Jim which would indicate that their existing parent-child relationships with Ethan were not proper ones).

As for the fifth *Holley* factor, Anna testified that she had not yet completed the parenting class, the domestic violence class, and "MHMR." Although Prather stated that Jim's desire to participate in services came "very late in the game," Jim testified that the only portion of the family service plan he had yet to complete was the parenting class and BIPP, in which he had recently enrolled but that the time frame set out in their family plan as prescribed by the Department had

---

[13]"A parent's rights cannot be terminated based on poverty without a showing that the poverty has endangered the child." *In re S.I.-M.G.*, No. 02-12-00141-CV, 2012 WL 5512372, at *11 (Tex. App.—Fort Worth Nov. 15, 2012, no pet.) (mem. op.) (citing *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.— El Paso 2000, pet. denied)).

not yet tolled. Due to the lack of evidence introduced at the final hearing, as explained above, no evidence at trial demonstrated that Anna and Jim required parenting class or domestic violence prevention classes. Nevertheless, the evidence shows that the Department provided, and could continue to provide, programs to assist Anna and Jim. *See J.A.S.*, *Jr.*, 2013 WL 782692, at *9. As for the sixth *Holley* factor, Jim indicated that Ethan would reside with him and Anna at Jim's mother's home, and the Department indicated that Ethan's foster home placement was willing to adopt him. With respect to the last factor, Jim stated that he had not yet completed the Department's family service plan because the target date was two months from the final hearing and because he had only recently acquired the fee for the BIPP program. Anna offered no excuse, but, as we pointed out previously, was not required to offer one absent a showing that Ethan was removed for abuse or neglect.

The evidence before the trial court at the final hearing amounted to little more than a recitation that Ethan was in foster care, that his needs were being met, that he had bonded with the foster family, and that the foster family wanted to adopt him. Even if a parent's behavior "'may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.'" *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (quoting *In re W.C.*, 98 S.W.3d 753, 766 (Tex. App.—Fort Worth 2003, no pet.)). Based on the evidence properly before the trial court, we conclude that no reasonable fact-finder could have formed a firm belief that it was in Ethan's best interests to terminate Anna's and Jim's parental rights. *See id.* (finding

insufficient evidence that child's foster parents were loving, wanted to adopt child, and could take care of child's needs); *J.A.S.*, 2013 WL 782692, at *8–12.

**VII.    We Remand the Case in the Interest of Justice**

As in *J.E.H.*, it is apparent here that the parties and the trial court were confused as to what evidence had been submitted for the trial court's consideration. *J.E.H.*, 384 S.W.3d at 871. "An appellate court has 'broad discretion to remand in the interest of justice.'" *Id.* at 872 (quoting *In re S.E.W.*, 168 S.W.3d 875, 885–86 (Tex. App.—Dallas 2005, no pet.)). "'As long as there is a probability that a case for any reason has not been fully developed, an appellate court has the discretion to remand rather than render a decision.'" *Id.* at 872 (quoting *S.E.W.*, 168 S.W.3d at 886). We choose to exercise that discretion here.

In doing so, we note that in addition to termination of Anna's and Jim's parental rights, the Department requested and obtained conservatorship of Ethan pursuant to Section 153.131 of the Texas Family Code. "The Texas Supreme Court has held that 'the differing elements and standards of review applied to conservatorship and termination orders require[] separate challenges on appeal.'" *Id.* at 871 (quoting *In re D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008)). Because Anna and Jim do not contest the Department's conservatorship, our reversal of the trial court's termination orders do not affect the conservatorship appointment. *In re J.A.J.*, 243 S.W.3d 611, 613 (Tex. 2007).

23

## VIII.  Conclusion

In the interests of justice, we reverse the trial court's order terminating Anna's and Jim's parental rights to Ethan and remand the cause to the trial court for a new trial.

Bailey C. Moseley
Justice

Date Submitted:     June 9, 2015
Date Decided:       June 26, 2015