

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00054-CV

_____

IN THE INTEREST OF T.C.H., A CHILD

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 15C1062-CCL

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

T.C.H.'s mother, Rachel,[1] had a history of drug use and failed rehabilitation, resulting in the termination of her parental rights to T.C.H. Appealing that termination, Rachel contends that, since no order existed, the trial court erred in finding she had failed to comply with the provisions of a court order that established the actions necessary to obtain T.C.H.'s return pursuant to ground (O) of Section 161.001(b)(1) of the Texas Family Code; that the evidence is factually insufficient to support the trial court's findings that grounds existed to terminate her parental rights under grounds (D) and (E) of Section 161.001(b)(1) of the Family Code; that the evidence is legally and factually insufficient to support the trial court's findings that grounds existed to terminate her parental rights under ground (N) of Section 161.001(b)(1) of the Family Code; that the evidence is factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of T.C.H.; and that the trial court erred in denying her oral motion for continuance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (b)(2) (West Supp. 2016). We affirm the trial court's judgment because we find that (1) this record contains an order setting out the actions necessary to obtain T.C.H.'s return, (2) sufficient evidence supports at least one statutory ground for termination of Rachel's parental rights to T.C.H., (3) sufficient evidence supports the finding that termination was in T.C.H.'s best interest, and (4) the trial court did not abuse its discretion in denying Rachel's oral motion for continuance.

---

[1] We refer to the child by his initials and to the child's relatives by fictitious names to protect the privacy of the child. *See* TEX. FAM. CODE ANN. § 109.002(D) (West 2014).

Sheila Moorehead, an investigator for the Texas Department of Family and Protective Services (TDFPS) testified that, on June 3, 2015, she received a "priority one" intake, meaning it was of imminent concern, regarding T.C.H. Moorehead and a Bowie County Deputy Sheriff went to Rachel's residence the next day. Hearing a television inside the mobile home, they knocked on the front door and identified themselves. Moorehead testified that whoever was inside turned down the television and went to the other end of the residence. She and the deputy went around the mobile home, knocked on doors and windows, and identified themselves. When no one answered, she left her business card on the windshield of a truck parked at the residence. She testified that she returned to the home on each of the three following days, but could not make contact with Rachel. Moorehead said she finally made contact with Rachel, T.C.H., and Bobby, Rachel's paramour, at Rachel's workplace on June 8.

Moorehead asked Rachel to submit to a drug test, and she agreed. On June 10, Rachel submitted to testing, which showed positive results for amphetamines, methamphetamine, marihuana, cocaine, opiates, and PCP. On June 18, Moorehead talked with Rachel by telephone and informed her of the test results. She also testified that Rachel admitted to using everything she could get her hands on and that she was pregnant at that time. Rachel agreed to meet Moorehead at Rachel's mother's house that same evening and at such meeting agreed to place T.C.H. under the care of her mother. A family team meeting was held June 23, at which Rachel agreed to place T.C.H. with her sister and brother-in-law, Harley and Cal. Moorehead testified that T.C.H. was six months old at the time and that he was also tested for drug exposure since Rachel had a positive result. T.C.H. tested positive for amphetamines and methamphetamine. On

3

cross-examination, Moorehead acknowledged that Rachel told her that she was breast-feeding T.C.H. at the time.

Jasmine Turner, a conservatorship caseworker for TDFPS, testified that she attempted to provide services to Rachel when she was assigned to the case, but could not make contact with her until January 2016, when Rachel was incarcerated in the Bowie County jail on child endangerment charges. Turner testified that, by that time, Rachel had delivered her baby in Oklahoma, but that the baby was deceased. Turner testified that she attempted to locate Rachel by going to her last known address and calling her last known phone number, but was not able to make contact with her. She also said that she left voicemail messages, but Rachel never called her back. She also contacted Rachel's family members to try to locate Rachel. Turner testified that, when she finally talked with Rachel in the Bowie County jail, she gave Rachel a copy of her service plan. She also testified that Rachel never contacted her while she was not incarcerated between October 2015 and January 2016.

Turner further testified that Rachel had completed her parenting classes since she had been in a Substance Abuse Felony Punishment Facility (SAFPF).[2] She also said Rachel was working on some of the other services required of her while in the facility, but that she had not completed them. The other services included drug rehabilitation, counseling, and drug testing. Turner testified that T.C.H. had been with Harley and Cal since June 23, 2015. She was not sure of the last time Rachel had seen the child. She said that Rachel's visitation schedule had been modified

_____

[2]*See* TEX. CODE CRIM. PROC. ANN. art 42.12, § 14 (West Supp. 2016).

4

only when agreed to by Harley and Cal due to Rachel's non-involvement in the case. Turner had asked for this modification since Rachel was not visiting the child regularly.

Turner also testified that Harley and Cal have indicated a desire to adopt T.C.H. She testified that, in her opinion, it would be in the best interest of the child to terminate Rachel's parental rights since she has an extensive history of illegal drug use, she has been to several drug rehabilitation and detoxification facilities, and she has failed to take responsibility as a parent for T.C.H. In Turner's opinion, TDFPS should be named permanent managing conservator of T.C.H so it can proceed with his adoption by Harley and Cal.

On cross-examination, Turner testified that she did not know if Rachel had been found guilty of child endangerment. She also testified that treatment at the SAFPF would count as satisfying the drug treatment requirement under her service plan. On redirect examination, Turner testified that Rachel had not worked any services before her incarceration and that the only progress she had made was while incarcerated.

Harley testified that Rachel was twenty-four years old and that she entered her first rehabilitation facility at the age of fifteen for methamphetamine addiction. Since that time, she had been in sixteen rehabilitation or detoxification centers and sober-living homes. She testified that, in spite of this, Rachel had continued to use drugs. Harley testified that T.C.H. was six months old when he was placed in their home and that Harley knew he had tested positive for drug exposure. She said he had not received any treatment for drug exposure, but that, from the time they got him, he had been easily agitated and angry. Harley testified that his physician could not say whether this was related to the drug exposure. Harley testified that T.C.H. has been living

5

with them over one year and was doing quite well. She said that their fourteen-year-old daughter and seven-year-old son both adored him. She also testified that T.C.H. had been a blessing to her and Cal.

Harley testified that, at the beginning of the case, Rachel was not incarcerated. At first, Rachel would check in once a week by text message, but the frequency diminished over time. In addition, in June and July 2015, either Harley or Cal would take T.C.H. to see Rachel, who lived two and one-half hours away, since she did not have transportation. Harley also testified that the last time Rachel requested visitation was the end of July 2015. The only other time Rachel saw T.C.H. was for about five minutes at the end of November 2015, at the graveside service for his infant sister. Harley also testified that she had kept in regular communication with Rachel during Rachel's incarceration in a SAFPF by writing letters and sending her photographs of T.C.H.

Harley also testified that as long as Rachel lived a sober and healthy lifestyle, they wanted her to be a part of T.C.H.'s life. Harley believed that adoption was in the best interest of T.C.H. because he was a part of their family and had become her child. She believed that, at that point, to refer to T.C.H. as her nephew would be unnatural and make him feel different. Harley testified that she also believed termination of Rachel's parental rights was in T.C.H.'s best interest and for his protection. She said she never wanted him to spend another moment in the environment in which he had been. She also said she wanted T.C.H. to have a relationship with Rachel, but she wanted to be able to protect him. Harley further testified that she and Cal had been his parents for the last year. She said that, based on her knowledge of Rachel's past, Rachel had not been able to establish a pattern of sobriety in her life.

6

On cross-examination by the attorney ad litem, Harley testified that she and Cal were able to provide a safe and stable environment for T.C.H. and that they were able to meet his physical and emotional needs. She testified that they live in a four bedroom, three-bath house in Fate, Texas, and that T.C.H. had his own room.

Cal agreed with Harley's testimony and opinions. He also testified that they had been married for sixteen years and that he was a police officer with the Rowlett Police Department. He also testified that he would like to adopt T.C.H. and that he felt like T.C.H. was already his son. He also confirmed Harley's testimony regarding Rachel's history of drug use and rehabilitation and detoxification centers.

Melinda Cree, the program director for Court Appointed Special Advocates (CASA), testified that she had attempted to contact Rachel on numerous occasions, but was successful only once. She related that she talked with Rachel by telephone the night before the hearing in October 2015 regarding temporary orders. She testified that Rachel told her she wanted T.C.H. back in her home. However, when Cree asked her if she was going to be in court the next day to testify, the telephone went dead, and Cree was never able to make additional contact with her.

She also testified that she had been to Harley and Cal's home and visited T.C.H. there. Cree testified that T.C.H. was doing wonderfully in the home, that he adored them, and that they adored him. She recommended the termination of parental rights to free T.C.H. for adoption, based on Harley and Cal being his parents the last year, and Rachel's numerous unsuccessful attempts at rehabilitation. She said she believed that T.C.H. needed permanency and that adoption would give that to him. The ad litem for T.C.H. expressed her agreement with Cree's recommendation.

*(1)    This Record Contains an Order Setting Out the Actions Necessary to Obtain T.C.H.'s Return*

Rachel asserts that the trial court erred in finding that she had failed to comply with the provisions of a court order that established the actions necessary to obtain T.C.H.'s return because no such order existed.  She also contends that no service plan was filed by the TDFPS.  That point of error is without merit.

Ground (O) of Section 161.001(b) of the Texas Family Code provides that the parent-child relationship may be terminated if it is found by clear and convincing evidence that a parent has:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

TEX. FAM. CODE ANN. § 161.001(b)(1)(O).  As Rachel points out, before her parental rights may be terminated for failing to comply with the court's order, an order must be in existence.  *See In re B.L.R.P.*, 269 S.W.3d 707, 710–11 (Tex. App.—Amarillo 2008, no pet.).  The record in this case reflects that a temporary order setting forth those actions necessary to obtain return of the child was signed and filed October 20, 2015.  The temporary order required Rachel to attend and fully cooperate in counseling, to attend and successfully complete parenting classes, to submit to court-ordered drug and alcohol assessments, and to comply with the TDFPS' original and amended service plans.  The service plan must be filed within forty-five days of the issuance of the temporary order.  TEX. FAM. CODE ANN. § 263.101 (West Supp. 2016).  The record reflects that, as of the status hearing held November 19, 2015, the service plan had been filed with the court.

8

Since both the order and service plan are in the record, this point of error is without merit. We overrule it.

*(2)*     *Sufficient Evidence Supports at Least One Statutory Ground for Termination of Rachel's Parental Rights to T.C.H.*

"Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.'" *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). Further, when the trial court finds multiple predicate grounds, we will affirm if any one ground is supported by sufficient evidence. *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.).

In this case, Rachel has not challenged the legal or factual sufficiency of the evidence supporting the trial court's finding under ground (O). Since this single ground, accompanied by a finding of best interest, supports the order of termination, it is unnecessary to review Rachel's legal and factual sufficiency challenges as to the other grounds. *In re J.F.G., III*, No. 06-16-00031-CV, 2016 WL 4256921, at *4 (Tex. App.—Texarkana Aug. 5, 2016, no pet.) (citing *K.W.*, 335 at 769–70). We overrule Rachel's points of error challenging the legal and factual sufficiency of evidence supporting the trial court's finding of at least one ground for termination.

*(3)     Sufficient Evidence Supports the Finding that Termination Was in T.C.H.'s Best Interest*

Rachel also challenges the legal and factual sufficiency of the evidence[3] supporting the trial court's finding that termination of her parental rights is in the best interest of T.C.H.[4] We strongly presume that keeping a child with a parent is in the child's best interest. *In re E.W.*, 494 S.W.3d 287, 300 (Tex. App.—Texarkana 2015, no pet.); *see In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Termination is supported only by the most solid and substantial reasons. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *E.W.*, 494 S.W.3d at 300.

In determining the best interest of the child, we consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

---

[3]In *L.E.S.*, we set out the standard of review for challenges to the sufficiency of the evidence in parental-rights termination cases:

> In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

> In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted. *J.P.B.*, 180 S.W.3d at 573.

10

*In re N.L.D.*, 412 S.W.3d 810, 818–19 (Tex. App.—Texarkana 2013, no pet.) (citing *Holley v.*

*Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see E.N.C.*, 384 S.W.3d at 807 n.6; *see also* TEX.

FAM. CODE ANN. § 263.307(b) (West Supp. 2016).

It is not necessary to prove all of these factors as a condition precedent to parental-rights

termination. *C.H.*, 89 S.W.3d at 27; *N.L.D.*, 412 S.W.3d at 819. Evidence relating to a single

factor may suffice in a particular situation to support a finding that termination is in the best interest

of the child. *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing *In re*

*J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001), *disapproved on other grounds by In re*

*J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002)). When considering the child's best interest, we may

---

In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26). Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

*L.E.S.*, 471 S.W.3d at 920–21.

[4]The State argues that Rachel has not challenged the trial court's best-interest finding. However, under her point of error challenging the trial court's denial of her motion for continuance, Rachel contends that the State must show that termination is in the child's best interest. She also argues that her absence from the hearing prevented the trial court from making this determination and that there was factually insufficient evidence to support the trial court's best-interest finding. While Rachel does not specifically address the factors the trial court must consider in making this determination, we find that Rachel has preserved this point of error.

take into account that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Further, the amount of contact between the parent and child, the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *See C.H.*, 89 S.W.3d at 28.

The evidence showed that Rachel had been abusing illegal drugs since she was fifteen years old, that, in the past nine years, she had been treated in sixteen drug rehabilitation and detoxification facilities, and that she continued to use multiple illegal drugs at the time T.C.H. was removed from her care, even though she was pregnant with her second child. This evidence established that Rachel endangered the emotional and physical needs of T.C.H. while he was in her care and that she lacked the judgment and parental abilities necessary to properly care for T.C.H. Even though Rachel had completed parenting classes while in a SAFPF, the trial court could reasonably find that Rachel had not demonstrated that she possessed sufficient judgment and parenting abilities since she had made no effort to pursue those classes before being incarcerated. In addition, the evidence showed that, for five months while T.C.H. was in the care of Harley and Cal and while Rachel was not incarcerated, she neither visited, nor requested to visit, T.C.H. This, along with her illegal drug use, shows that she does not have a proper parent-child relationship with T.C.H.

12

In contrast, the evidence showed that Harley and Cal took full responsibility for the care of T.C.H. and provided him with a stable home environment where his emotional and physical needs were met by Harley, Cal and their two children. Harley and Cal also testified that they planned to adopt T.C.H. so he would be a permanent member of their family, which would provide him with a permanent, stable home environment.

Factually sufficient evidence supports the trial court's best-interest finding. We overrule this point of error.

*(4)* *The Trial Court Did Not Abuse Its Discretion in Denying Rachel's Oral Motion for Continuance*

Rachel also complains that the trial court erred in denying her oral motion for continuance, which she asserted immediately before the final hearing. When the case was called for final hearing, Rachel announced "not ready," which the trial court interpreted as a motion for continuance. We review a trial court's denial of a motion for continuance under an abuse-of-discretion standard. *In re D.W.*, 353 S.W.3d 188, 192 (Tex. App.—Texarkana 2011, pet. denied). We will not disturb the trial court's grant or denial of a motion for continuance unless the record discloses a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *D.W.*, 353 S.W.3d at 192. Rule 251 of the Texas Rules of Civil Procedure requires a motion for continuance to be in writing and "supported by an affidavit." TEX. R. CIV. P. 251; *see Villegas*, 711 S.W.2d at 626; *In re J.D.R.*, No. 04-16-00076-CV, 2016 WL 3797137, at *2 (Tex. App.—San Antonio, July 13, 2016, no pet.) (mem. op.); *In re M.R.R.*, No. 10-15-00303-CV, 2016 WL 192583, at *7 (Tex. App.—Waco Jan. 14, 2016, no pet.) (mem. op.). If a motion for continuance is not in writing and supported by an affidavit, we presume that the trial court did not abuse its discretion

13

in denying the motion.  *J.D.R.*, 2016 WL 3797137, at \*2; *M.R.R.*, 2016 WL 192583, at \*7; *see also Villegas*, 711 S.W.2d at 626.  Since Rachel's motion did not comply with Rule 251, we cannot conclude that the trial court abused its discretion by denying the motion for continuance.  *J.D.R.*, 2016 WL 3797137, at \*2; *M.R.R.*, 2016 WL 192583, at \*7.  We overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice

Date Submitted:      November 16, 2016
Date Decided:        December 8, 2016