

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00607-CV

**IN THE INTEREST OF S.A.M.**, J.A.M. Jr., J.E.L.M.,
J.A.M., Z.A.M., I.A.M., and J.A.M., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-02510
Honorable Susan D. Reed, Judge Presiding[1]

Opinion by:     Beth Watkins, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: February 13, 2019

AFFIRMED

This is an appeal from an order terminating appellant mother's ("Mother") and appellant father's ("Father") parental rights to their seven children. On appeal, Mother and Father both contend the evidence is legally and factually insufficient to establish termination was in the children's best interests. Father raises a second issue in which he contends the trial court erred in terminating his parental rights on the ground that he failed to complete his service plan. We affirm the order of termination.

---

[1] The Honorable Peter Sakai is the presiding judge of the 225th Judicial District Court, Bexar County, Texas. However, the termination order in this case was signed by the Honorable Susan D. Reed, sitting by assignment.

**BACKGROUND**

The Texas Department of Family and Protective Services ("the Department") received a referral alleging substance abuse and physical neglect. The Department's responding investigator testified the children, who at the time of the August 2018 trial ranged in age from eleven to two, were removed and taken to the hospital. It was determined the children were suffering from scabies, lice, and pinworms. They were also severely underweight for their respective ages and had blisters on their feet in varying stages of healing.

The home in which the children were found was described as an 18' x 5' shed with three plywood walls; the fourth wall was comprised of a bed sheet that acted as a door. There was neither electricity nor running water in the home and no bathroom facilities. According to the investigator, the home smelled of mildew and feces.

When the Department visited the home, so did law enforcement. It was discovered Mother was in possession of controlled substances — marijuana and methamphetamine — and she was arrested. Father was also arrested based on the existence of eight outstanding traffic warrants. Because no suitable family placements were available, the children were placed first at The Children's Shelter. Thereafter, they were separated and placed in three foster homes. However, by the time of the final hearing, five of the seven — the eleven, nine, seven, six, and four-year-old children, were living together in a single, foster-to-adopt home. The two youngest children — ages two and three — were in a separate foster-to adopt home.

The day after the children were removed, the Department filed a petition to terminate Mother's and Father's parental rights in the event reunification was unattainable. The Department created service plans for Mother and Father. Pursuant to their service plans, the parents were required to, among other things: (1) obtain and maintain employment, demonstrating the ability to provide for themselves and the children; (2) obtain and maintain safe and stable housing for

themselves and the children; (3) complete a drug assessment and abide by recommendations made as a result of the assessment; (4) attend Narcotics Anonymous/Alcoholics Anonymous meetings; (5) submit to random drug tests as requested by the Department; (6) attend classes on domestic violence and parenting; and (7) participate in a mental health assessment and in individual therapy. The trial court ordered the parents to comply with each requirement set out in the plan. During the course of this matter, the trial court held the statutorily required-status and permanency hearings, and ultimately, the matter moved to a final hearing.

At the final hearing, the trial court heard testimony from three witnesses, including the Department investigator, the Department case worker, and Mother. At the conclusion of the hearing, the trial court rendered a termination order in which it found each parent: (1) knowingly placed or allowed their children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed their children with people who engaged in conduct that endangered their physical or emotional well-being; (3) failed to comply with a court order that established the actions necessary for them to obtain the return of their children, i.e., failed to complete the court-ordered service plan; and (4) used a controlled substance in a manner that endangered the health and safety of their children and failed to complete a court-ordered drug treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P). The trial court also found that Father constructively abandoned the children. *See id.* § 161.001(b)(1)(N). The trial court further found termination of Mother's and Father's parental rights would be in the best interests of the children. *See id*. § 161.001(b)(2). Mother and Father timely filed notices of appeal.

**ANALYSIS**

On appeal, Mother and Father challenge the legal and factual sufficiency of the evidence in support of the trial court's findings that termination was in the best interests of the children. *See*

*id.* § 161.001(b)(2).  Father raises a second issue in which he contends the trial court erred in terminating his rights for failure to complete his service plan pursuant to section 161.001(b)(1)(O) of the Texas Family Code ("the Code").  *See id.* § 161.001(b)(1)(O).  He argues he was not given nine months to complete the plan as required by the statute.  *See id.*

### Mother and Father: Sufficiency of the Evidence — Best Interests

#### Standard of Review

A trial court may terminate a parent's right to a child only if it finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of the child.  *See id.* § 161.001(b).  "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007.  Courts require this heightened standard of review because termination of a parent's rights to a child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns.  *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015).  When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review.  *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency).  In sum, the standards require that we determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that termination was in the child's best interest.  *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact.  *In re J.P.B.*, 180 S.W.3d at 573.  Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions.  *Id.*

*Best Interests*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2012) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

In analyzing the evidence within the *Holley* framework, we recognize that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child —

not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

### 1. *Desires of the Child*

Department case worker Rebecca Salinas testified she discussed conservatorship with only the oldest child, who was eleven at the time of the hearing. *See Holley*, 544 S.W.2d at 371–72. Based on her discussions with this child, she testified the five oldest children wanted to be reunited with their parents, but she admitted she had not spoken to any of the children, other than the oldest, about conservatorship. *See id.* With regard to the two youngest children, at the time of the final hearing, they were two and three years old, too young to express their desires regarding conservatorship. *See* TEX. FAM. CODE § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. However, courts, including this one, have held that when a child cannot express his or her desires, a fact finder may consider whether the child has bonded with the foster family, is well cared for by them, and has spent minimal time with the parent. *In the Interest of A.F.C.*, No. 04-17-00080-CV, 2017 WL 3159447, at *3 (Tex. App.—San Antonio July 26, 2016, no pet.) (mem. op.); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

According to Ms. Salinas, Mother was permitted supervised visits with the children for one hour, three times a month. The testimony showed Mother attended all but one of her court-ordered visits. However, Ms. Salinas testified Mother arrived fifteen to thirty minutes late at least once a month. Thus, Mother spent approximately twenty to twenty-four hours with her children over the course of the case. Mother explained her late arrivals were due to a lack of transportation; she had to rely on bus service to attend visitation. Ms. Salinas agreed the children were bonded with Mother and loved her. However, Ms. Salinas advised the visits raised concerns with Mother's

parenting skills. Specifically, during visitation Mother seemed unable to discipline the children. Ms. Salinas stated that either she, the CASA volunteer, or a third-party monitor would have to step in and control the children. When asked if she tried to "redirect" Mother with regard to discipline, Ms. Salinas testified she tried, but Mother "would just keep going with the visit."

Father did not obtain court-ordered visitation until January 9, 2018. The record suggests Father's access to visitation was delayed based on his failure to appear as a result of incarceration. However, Father visited the children only twice over the course of the case — from January to August. Ms. Salinas testified Father appeared for a third visit but was "under the influence and he had to be escorted out." Ms. Salinas said at this third attempted visit Father appeared "jittery, shaky, he had — his eyes were red." She also advised there were no additional visits because father was incarcerated, off and on, three times during "the lifetime of the case."

The evidence shows that as of the time of the final hearing, the five oldest children had been living with their respective foster-to-adopt families for approximately eight months. The two youngest children had been living with their foster parents for approximately five months. Ms. Salinas testified all of the children are "doing great," "adjusting well," and "excelling" in their current placements. *See A.F.C.*, 2017 WL 3159447, at \*3; *J.D.*, 436 S.W.3d at 118.

2. *Emotional & Physical Needs/Emotional & Physical Danger/Parenting Abilities*

The evidence shows the five oldest children had been in therapy for approximately three months prior to the final hearing. *See* TEX. FAM. CODE § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. Ms. Salinas testified they are doing well, but the children "don't want to talk … much about their parents." Additionally, the younger children have the emotional and physical needs associated with any young child. Several of the children, given their ages, are unable to care or provide for themselves at all and are dependent on the adults in their respective lives for all their needs. *See* TEX. FAM. CODE § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. This is particularly

true of the children who are between the ages of two and four. *See* TEX. FAM. CODE § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

With regard to the emotional and physical danger to the children — now and in the future, as well as parenting abilities, the evidence shows both parents have issues with controlled substances. *See* TEX. FAM. CODE § 263.307(b)(8) (history of substance abuse by child's family or others who have access to child's home); *id.* § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports finding that termination is in best interest of child). Department investigator Pamela Grover testified that upon initial contact with the parents, Mother was found to be in possession of marijuana and methamphetamine and was arrested. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d at 204. When asked during the final hearing whether the arrest was for possession or distribution, Mother refused to answer. *See In re M.L.C.*, NO. 04-17-00459-CV, 2017 WL 6597828, at *4 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (mem. op.) (holding that in termination case, trier of fact may draw adverse inferences regarding drug possession based on parent's refusal to answer questions relating to those issues). She also refused to answer when asked how often she used drugs. *See id.* She admitted her drug of choice is marijuana.

Pursuant to her service plan, Mother was required to submit to drug testing upon request by the Department. Ms. Salinas testified Mother was requested to test a total of ten times, but failed to test six times. Mother was ordered by the court to take a drug test on May 1, 2018. That test showed she was positive for marijuana. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d at 204. Mother tested positive despite having been previously discharged from outpatient drug treatment on April 3,

2018. *See* TEX. FAM. CODE § 263.307(b)(11) (willingness of child's family to effect positive environmental and personal changes within reasonable period of time); *Holley*, 544 S.W.2d at 371–72.

Mother disputed much of Ms. Salinas's testimony, stating specifically the case worker was lying when she testified Mother had a positive drug test in May. Mother also claimed, contrary to Ms. Salinas's testimony, that Mother continually requested drug tests, but the Department refused. Mother asserted she would be clean if tested because she is "on bond" in a pretrial drug diversion program that requires her to drug test every week and she has always "com[e] out clean." Mother is in the pretrial diversion program as a result of her arrest for possession of controlled substances at the time the Department removed the children. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d at 204.

As for Father, Ms. Salinas testified he too has an ongoing issue with controlled substances. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d at 204. She noted that during the course of the case he was arrested for possession of a controlled substance. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d at 204. When Father was ordered by the court to submit to drug testing on May 1, 2018, he tested positive for methamphetamine and marijuana. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d at 204. Ms. Salinas stated she requested that Father submit to drug testing several times during the case, but he failed to submit to any test other than the court-ordered, May 1 test. *See* TEX. FAM. CODE § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. Salinas also testified that when she made an unannounced visit to the home in which Father was staying after the removal — his mother's house — Father was intoxicated. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Moreover, as described above, he showed up for a visitation under the influence of something and had to be escorted out. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Additionally, Father was arrested three times during the course of the case and spent much of the time incarcerated. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The record shows he was arrested at the time of removal for eight outstanding traffic warrants, was subsequently arrested for a probation violation — establishing he had some kind of prior offense for which he received probation, and was arrested a third time for possession of a controlled substance and evading arrest. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

A parent's criminal activities and history — here, possession and use of controlled substances, evading arrest, traffic violations resulting in arrest due to outstanding warrants — are relevant to a best interest analysis, specifically to the emotional and physical danger to the child. *See In re K.L.P.*, No. 04-17-00253-CV, 2017 WL 4014613, at *5 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.); *In re R.T.*, No. 09-15-00425-CV, 2016 WL 821844, at *8 (Tex. App.—Beaumont, Mar. 3, 2016, no pet.) (mem. op.) (citing *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.)). Drug use tends to establish a course of conduct endangering the emotional and physical well-being of the child. *See In re K.L.P.*, 2017 WL 4014613, at *5 (citing *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied)). Additionally, criminal conduct and incarceration affects a parent's life and the ability to parent, thereby subjecting a child to potential emotional and physical danger. *Id.* (citing *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.)). These are considerations for the fact finder in making a best interest determination.

There was also testimony regarding alleged domestic violence between Mother and Father. *See* TEX. FAM. CODE § 263.307(b)(7) (history of abusive or assaultive conduct by child's family or others with access to home); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Ms. Grover, the investigator, testified the Department felt it was necessary to conduct forensic interviews of the children because, among other things, the eleven-year-old child "made allegations of domestic violence." *See* TEX. FAM. CODE § 263.307(b)(7); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Ms. Grover stated the violence was between Mother and Father. Evidence of domestic violence in the home supports a trial court's best-interest finding under the third *Holley* factor — emotional and physical danger to the child now and in the future, as well as subsection E of section 263.307(b)(12). *See Holley*, 544 S.W.2d at 371–72; *see also* TEX. FAM. CODE § 263.307(b)(12)(E) (stating courts may consider whether parent has adequate skills to protect child from repeated exposure to violence although violence may not be directed at child); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (stating domestic violence, even when child is not intended victim, supports finding that termination is in child's best interest). Simply exposing a child to the other parent's violence is a relevant consideration in determining a child's best interest. *See In re O.N.H.*, 401 S.W.3d 681, 684–85 (Tex. App.–San Antonio 2013, no pet.).

The evidence also showed the family has previous involvement with the Department concerning the same issues. *See* TEX. FAM. CODE § 263.307(b)(10) (willingness of parent to seek out, accept, and complete counseling services); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Ms. Salinas testified she believed termination was in the best interests of the children in part because the parents had continued prior patterns of concerning behavior exhibited in two other Department cases. And, despite the prior involvement with the Department, the parents failed to make changes, mandating Department legal intervention.

A parent's performance under a service plan is also relevant to several of the *Holley* factors, including the emotional and physical danger to the child now and in the future, parental abilities, and stability. *Holley*, 544 S.W.2d at 371–72. It is also relevant to some of the factors set out in section 263.307(b): (1) the willingness of the parent to seek out, accept, and complete counseling services; (2) the willingness and ability of the parent to effective positive changes within a reasonable time; and (3) whether the parent demonstrates adequate parenting skills. TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12). Given the connection between a service plan and the *Holley* and statutory factors, a parent's actions or inactions with regard to the service plan is relevant to a child's best interest. *In re A.C.B.*, 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.); *see In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (noting failure to comply with family service plan supports finding that termination is in best interest of child).

As previously noted, the Department prepared a service plan for both parents that required them to: (1) obtain and maintain employment; (2) obtain and maintain safe and stable housing; (3) complete a drug assessment and abide by any resulting recommendations; (4) attend Narcotics Anonymous/Alcoholics Anonymous meetings; (5) submit to random drug tests; (6) attend classes on domestic violence and parenting; and (7) participate in a mental health assessment and in individual therapy. According to Ms. Salinas, Father failed to complete or even engage in a single service. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88. Admittedly, Father was incarcerated for a good portion of the case, and Ms. Salinas testified he was willing to work on his service plan. However, when he was not jailed — a total of three or four months during the course of the case, he never attempted to start any services. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at

887–88. Although Father claimed he was working when not incarcerated — construction and landscaping, he failed to provide Ms. Salinas with proof as required by the service plan. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88. As for a stable home, both parents apparently planned to reside with the children in the home of Father's mother in the event the children were returned. Father's mother was investigated as a potential placement for the children, as were two of Father's sisters, but all were determined to be unsuitable because they have prior history with the Department. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting parent's inability to provide stable home supports finding that termination is in best interest of child).

As for Mother, Ms. Salinas testified Mother engaged in services, but failed to complete therapy, failed to follow up "with her psychological," and failed to complete her parenting and domestic violence classes. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88. Although she completed out-patient drug treatment, she tested positive for marijuana after doing so. *See* TEX. FAM. CODE § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re L.R.G.*, 498 S.W.3d at 204; *In re S.B.*, 207 S.W.3d at 887–88. She also completed her psychological assessment, but failed to follow up as required. Mother also failed to complete her parenting and domestic violence classes. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88. Mother also failed to demonstrate stable employment. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88. Mother testified she is employed, "cleaning college dorms." However, she could not produce proof of employment, testifying she is paid in cash. Upon

examination, Mother was unable to name her employer, her supervisor, or the location of her employer.

According to Ms. Salinas, Mother first used employment as an excuse for her failure to engage in services. *See Holley*, 544 S.W.2d at 371–72 (any excuse for acts or omissions of parent). Later, she claimed a lack of transportation. *See id.* Ms. Salinas testified she offered to assist Mother with transportation, but Mother failed to provide Ms. Salinas with information about her appointment. *See id.* Ms. Salinas stated it was only in July that Mother began to re-engage in services. *See In re R.L.G.*, No. 04-14-00238-CV, 2014 WL 4922927, at *7 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.) (noting mother's delay in beginning services as consideration for best interest determination).

The foregoing is evidence of a pattern of activity that a fact finder could have determined was detrimental to (1) the emotional and physical needs of the children now and in the future, and (2) the emotional and physical danger to the children now and in the future. *See Holley*, 544 S.W.2d at 371–72. It also constitutes evidence from which the fact finder could have found a deficiency in Mother's and Father's ability to parent the children. *See id.* By far, however, the most concerning evidence with regard to these *Holley* factors related to the living conditions the children were subjected to and its effects on their health and well-being. *See id.* Ms. Grover testified the Department received a report of physical neglect. When the Department arrived to investigate, the family — Mother, Father, and all seven children — were living in a 18' x 5' shed with three plywood walls. *See id.* The fourth wall was a sheet through which animals ran in and out. The home had no electricity or running water. *See id.*; *see also In re S.B.*, 207 S.W.3d at 887 (noting evidence that power and water in home had been shut off at least once was best interest consideration). There was no bathroom. *See Holley*, 544 S.W.2d at 371–72. There was no food in the home. *See id.* Ms. Grover testified there was clothing all over the floor and the place smelled

of mildew and feces. *See id.* There was a single mattress on the floor that Ms. Grover described as "mildewy and smell[ing] of mildew." *See id.* The floor was made of cement and had debris and trash randomly scattered about. *See id.*

The evidence showed there was an actual home on the property, but it was occupied by a "family friend" who was attempting to help. The friend stated the family was living in the back shed and were being charged $200.00 per month to stay there. The friend advised Father was going to build-out the shed for his family. Mother testified they had all the materials necessary to add another room and a bathroom. She had expected it to be finished the very day the Department investigator arrived. However, the description by the investigator and the photographs admitted into evidence suggest this would have been impossible.

Mother testified they had been living in the shed for three months. *See id.* She also stated that initially they had been sleeping in the house and the children would bathe inside the house. However, Ms. Grover testified that based on what the family friend and children told her, the family did not use the friend's home daily or even weekly, but occasionally. *See id.*

Ms. Grover opined the conditions under which the children were living constituted a physical danger to their well-being. *See id.* It appears her fears were borne out because when the children were taken to a hospital for examination, it was determined they were all suffering from scabies, lice, and pinworms. *See id.* Additionally, all of the children were underweight for their respective ages and had blisters on their feet — some worse than others. *See id.* Mother testified she had taken the children to the doctor for physicals and they were treated for scabies and lice. She claimed the doctor stated they did not have pinworms. However, upon further questioning, it appears Mother was addressing some previous time period.

3. *Available Programs to Assist Individual to Promote Best Interest*

As detailed above, the Department created a service plan for the parents that included referrals to numerous programs to assist in completing the plan's requirements. However, neither parent completed services. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88. Father wholly failed to engage in or complete a single service, and Mother failed to complete many of her services. *See* TEX. FAM. CODE § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72; *In re S.B.*, 207 S.W.3d at 887–88.

4. *Plans for Children by Those Seeking Custody/Stability of Home or Proposed Placement*

Mother's initial plan was for the family to reside with Father's mother. *See Holley*, 544 S.W.2d at 371–72. However, the Department rejected Father's mother as a placement for the children given her prior history with the Department. Moreover, the record shows that on occasion, other family members reside in the house. Mother said her desire was to obtain a place of her own, but stated she would need to get a job, which conflicts with her testimony that she had a job. *See id.* There was no mention of returning to the shed and completing construction. There was no testimony regarding Father's plans for a stable home.

The Department presented testimony that the children are doing well in their current placements and that termination is in their best interests. *See id.* The foster families desire to adopt the children in the event of parental termination. *See id.* The Department presented testimony that the foster parents intend to allow the siblings to maintain contact. *See id.*

5. *Act or Omissions Suggesting Parent-Child Relationship is Not Proper/Excuses*

With regard to the final *Holley* factors, the trial court heard evidence of the following acts and omissions by the parents, establishing the existing relationship between the parents and the children is improper: (1) drug use; (2) criminal activity resulting in incarceration; (3) failure to

complete their service plans; and (4) failure to provide proper housing and medical treatment for the children. *See Holley*, 544 S.W.2d at 371–72. As to evidence of any excuse for their conduct, Father's excuse for his inability to provide housing and complete services was incarceration. *See id.* Mother had numerous excuses, which are set out above. She also simply contradicted much of the testimony provided by the Department. *See id.*

Analyzing the evidence under the applicable law and appropriate standards of review, we hold the trial court could have reasonably determined termination of Mother's and Father's parental rights was in the children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108.

### *Father: Error to Terminate for Failure to Complete Service Plan*

Father raises a separate issue in which he contends termination on the ground he failed to complete his service plan was improper because he was not given sufficient time to do so. *See* TEX. FAM. CODE § 161.001(b)(1)(O). However, only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in a child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.); *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied). If multiple predicate grounds are found by the trial court, we will affirm based on any one ground, assuming a proper best interest finding, because only one predicate ground is necessary for termination of parental rights. *In re E.W.*, 494 S.W.3d 287, 292 (Tex. App.—Texarkana 2015, no pet.); *In re I.G.*, 383 S.W.3d 763, 768 (Tex. App.—Amarillo 2012, no pet.); *see In re A.A.T.*, 2016 WL 7448370, at *10 (Tex. App.—San Antonio Dec. 28, 2016, no pet.) (mem. op.).

Here, as set out above, the trial court found Father's parental rights should be terminated on multiple grounds, specifically that he: (1) knowingly placed or allowed his children to remain

in conditions or surroundings that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed his children with people who engaged in conduct that endangered their physical or emotional well-being; (3) constructively abandoned his children; (4) failed to comply with a court order that established the actions necessary for him to obtain the return of his children; and (5) used a controlled substance in a manner that endangered the health and safety of his children and failed to complete a court-ordered drug treatment program. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (N), (O), (P). As noted, Father challenges only the trial court's finding under subsection (O) — that he failed to complete his service plan, but does not challenge the findings made pursuant to subsection (D), (E), (N), or (P). Any one of these unchallenged findings — given our determination there was sufficient evidence to support a finding that termination was in the best interests of the children — was sufficient to support termination. *See In re A.V.*, 113 S.W.3d at 362; *In re R.S.-T.*, 522 S.W.3d at 111. Accordingly, we need not address Father's challenge to the termination order based on the trial court's finding that Father failed to complete his service plan in accordance with subsection (O). *See In re E.W.*, 494 S.W.3d at 292; *In re A.A.T.*, 2016 WL 7448370, at *10.

## CONCLUSION

Based on the foregoing analysis, we hold the trial court could have reasonably determined termination of Mother's and Father's parental rights was in the children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. We further hold we need not address Father's challenge to the trial court's finding pursuant to section 161.001(b)(1)(O) because the other grounds upon which termination was based have not been challenged and there is sufficient evidence that termination was in the children's best interests. *See In re E.W.*, 494 S.W.3d at 292;

*In re A.A.T.*, 2016 WL 7448370, at \*10. Accordingly, we overrule Mother's and Father's complaints and affirm the trial court's order of termination.

Beth Watkins, Justice

DO NOT PUBLISJH