# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00722-CV

---

**S. L. and J. R., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-21-003638, THE HONORABLE CLEVE WESTON DOTY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

S.L. (Father) and J.R. (Mother) appeal from the termination of their parental rights to their daughter, Ella, who was born in December 2020.[1]  As explained below, we reverse the order of termination and remand for further proceedings.

## PROCEDURAL & FACTUAL SUMMARY

In June 2021, the Texas Department of Family and Protective Services was awarded temporary managing conservatorship of Ella, who was about six months old.  The Department attached to its petition an affidavit of removal alleging repeated domestic violence between Mother and Father over the preceding three months and that the parents continued to have a relationship despite repeated cautions that Mother should cease contact with Father for

---

[1]  For the child's privacy, we will refer to her by an alias and to her family members by their relationships to her.  *See* Tex. R. App. P. 9.8.

her and Ella's safety. The affidavit stated that the Department was seeking conservatorship due to "ongoing domestic violence"—asserting that there had been nine reports of "extreme domestic violence" since March 15—and because Mother "has proven not to be a protective parent by continuing to have contact with [Father] after being told on multiple occasions not to have any form of contact with him to prevent further escalation and danger to" Ella.

After Ella's removal, both parents were ordered to remain in contact with their caseworker and keep the caseworker informed of any change in their contact information; obtain and maintain sufficient income to support themselves and Ella; obtain and maintain stable, suitable housing; participate in drug testing; complete a drug and alcohol assessment (an OSAR) and follow all recommendations; complete a psychological evaluation and follow all recommendations; and participate in individual therapy. In addition, Mother was ordered to complete a protective-parenting class and a program for domestic-violence survivors, while Father was ordered to complete a nurturing-parenting class and a Batterers Intervention Program.

When trial commenced on August 30, 2022, the Department provided its opening arguments, and the trial court then recessed the hearing until September 19.[2] Conservatorship worker Shawn Schroeder testified that he had been assigned to the case in early August 2022, about seven weeks before the September 19 hearing. Although Schroeder did not have personal knowledge of the earlier history of the case, he testified that he had read the Department's file in

_____

[2] The trial was held remotely via Zoom. Mother did not attend. Her attorney initially said she had called to tell him "that the link [he had] sent her is not working." A few minutes later, the attorney stated, "Your Honor, my client initially indicated she was having some issues connecting. She may, in fact, be choosing to merely view this on YouTube." Father attended, but about two-thirds of the way through trial, someone identified in the reporter's record as "Unidentified Speaker" said, "Your Honor, [Father] doesn't wish to be here anymore. And he is becoming a little belligerent. So can he be excused?" The trial court said, "This is his choice. He has the absolute right to be here or not be here."

"Impact," which includes reports by the previous caseworker and notes from the investigation stage onward. Schroeder testified that Impact is where the Department keeps "case notes on anything and everything that's happened" and that "[i]f something happened, you document it." He also testified that it was standard practice for Department workers to "record absolutely everything in Impact" and stated, "We're told that if you didn't write it down, it didn't happen." Schroeder was asked whether he had verified any of the information contained in Impact, and he said, "I read everything in the Impact. And that, to me, is accurate." He agreed that his opinions in the case were "based on the conclusion [that] anything that CPS puts [in] Impact is correct." Schroeder explained that when a case is "transition[ed] from one team to another" or between caseworkers, the caseworkers generally discuss the case to bring the new worker up to date on the case. Schroeder was not able to talk to his predecessor, so he discussed Ella's case with his supervisor and read the file in Impact. He later testified that he had formed his opinion about Ella's best interest by reading the file and speaking to his supervisor.

The parents objected to Schroeder's testimony about events predating his assignment as inadmissible hearsay and not based on his personal knowledge. The trial court overruled the objection, ruling that the Department had established a predicate for Schroeder to testify about the entire case and that Schroeder was "testifying as a corporate representative, not as a traditional witness." The court also overruled an objection arguing that the Department's records had to be admitted into evidence before Schroeder could testify about them. *See* Tex. R. Evid. 1002 (the "Best Evidence Rule").

Schroeder testified that the Department got involved with the family "due to extreme domestic violence that had been reported to the Department. Also, there [were] nine occasions since the onset of the case [on] March 15th of 2021." He testified that the Department

3

was concerned that Mother "had not proven to be a protective parent" because she continued to have contact with Father after being repeatedly cautioned "not to have any form of contact with him to prevent further escalation and danger to" Ella. He stated that living in a home in which there is "ongoing domestic violence" affects a child emotionally and developmentally.

Schroeder said that after the Department was awarded temporary managing conservatorship in late July 2021, the parents were ordered to engage in services to address the concerns of domestic violence. Mother was ordered "to engage in psychological evaluation, individual therapy, protective parenting class, nurturing parenting class, random substance abuse tests," an OSAR evaluation, and a psychiatric evaluation. Father similarly was ordered to "participate in a psychological evaluation, individual therapy, protective parenting, nurturing parenting, also random substance abuse tests, . . . an OSAR evaluation, and a psychiatric evaluation." Schroeder said that Mother completed an OSAR in November 2021 and a psychological evaluation in December 2021 and that she had done three sessions of individual therapy. Schroeder further testified that although Mother claimed that she had completed a protective-parenting class, she had not provided a certificate of completion, and that her OSAR referred her "to follow up with Integral Care, which has not been completed." Asked about Father's progress, Schroeder stated that Father had completed a psychological evaluation in November 2021. Schroeder testified that neither parent had "fully engaged in any of those services provided to them" and that the Department still had the same concerns for Ella's safety.

Schroeder testified that Mother was asked seven times to submit to drug tests and that Father was asked five times; Mother and Father each completed two tests, and both tested positive both times. Schroeder did not testify what the parents tested positive for and did not know the dates of the positive drug tests but knew that they occurred before he was assigned to

4

the case, stating, "I want to say that they were this year." Schroeder could not recall if he had asked Father to take a drug test. He acknowledged that in addition to the seven tests he had mentioned, Mother had drug-tested two weeks before trial and had sent him the test results. Asked, "And, in fact, she tested clean on that day, didn't she," Schroeder answered, "I don't have that right now. I would have to look that up."

Schroeder testified that the parents were allowed weekly visitations but had not regularly visited Ella. He did not say how often the parents had visited but said that Father last visited the child in June 2022 and that Mother last visited in May 2022. Schroeder did not know either parent's work schedule but conceded that Mother's schedule might have made visitations difficult and said he knew Father "was working on construction projects outside of Austin and sometimes out of state." Schroder testified that if a parent reached out to change a visitation schedule because of work, he "would work with them" to accommodate the parent's needs. However, neither parent ever asked him to change the visitation schedule, and Impact did not reflect that Father had asked for virtual visits while he was working out of town.

Schroeder said that Father had been incarcerated several weeks before trial but did not provide any further details.[3] He had "[n]ot yet" visited Father in jail and said that before Father was incarcerated, he "attempted to [visit Father] at the address that was provided." Schroeder did not testify about any visits or attempted visits he or other caseworkers had with Mother.

---

[3] The Department's attorney stated in her opening argument that Father had been arrested about a week before the hearing commenced in August "for unlawful carrying of a weapon," that he was in jail, and that she thought "that there are other pending charges, including evading arrest, violation of a protective order, assault and family violence, and out-of-county felonies." However, other than Schroeder's statement that Father had been arrested several weeks earlier, there was no evidence provided about his arrest or the status of any pending charges.

Schroeder had met with Ella twice, once in her placement and once at the Department offices when he supervised a visit—he did not testify about the visit or which parent the visitation was with. Ella had been living with the same foster parents "[f]or the entirety of this case," and thus most of her memories were of that family. Schroeder said that Ella is "doing great" in the home and is "happy, healthy, giggly, smiles." The foster family hopes to adopt Ella, and the Department's plan for the child is unrelated adoption. Schroeder testified that termination is in Ella's best interest "[b]ecause of the lack of engagement in services. The parent—the parents had over a year to engage in services and have not done any of them." The Department wanted Ella to have permanency through adoption.

Court Appointed Special Advocates (CASA) volunteer Grace Kelso testified that she had been assigned to the case on August 24, 2022, and that she had learned about the case by speaking to her supervisor. Kelso had visited Ella once, and the supervisor and previous CASA volunteer had visited the child "at least monthly since the start of the case" and had attempted to contact the parents and their attorneys at least monthly.

Kelso testified that at the beginning of the case, CASA was concerned about "domestic violence between the parents, specifically [Father's] abusive behavior towards [Mother], and the dangerous situations that that put the child, [Ella], in," and that the parents had not alleviated those concerns by working services. Kelso testified about how CASA determines best interest, saying that it "considers multiple different factors: the child's safety, their emotional and physical well-being now and in the future, the current placement, and if the child can safely return to their parents or not. In this case, it does not appear that that is possible."

Kelso said that Ella will be two years old in December and "is a really sweet, bright, bubbly, young girl. She's speaking a lot. She loves playing with her older foster sibling.

6

She loves going on swings. That's her number one favorite thing to do. She's just a really sweet, great, little girl." Ella is "developmentally on target," and her foster parents "are able to meet all of her needs and are encouraging healthy development. She's walking, talking, doing everything she should do at this point." If the parents' rights were terminated, "the foster parents plan to adopt," and Kelso testified that "CASA believes it's in the best interest of [Ella] for parental rights to be terminated so that she can be—find permanency through adoption at her current placement." Kelso also testified that the foster parents plan to set up an email account to allow Mother to have contact with Ella and that "[p]otentially, in the future, they would consider some future contact just depending on safety for [Ella]."

At the conclusion of the hearing, the Department asked the trial court to take notice of "the facts of the removal at the 262 hearing, as well as the [earlier orders] that have been referenced throughout today's hearing." Father's attorney objected that disputed facts or findings were "not appropriate for judicial notice." The trial court ruled:

> I'm overruling your objection as to taking judicial notice, particularly the prior court orders. You know, they're—they're good evidence of what the Court ordered. So I'm overruling that objection, but I do take your point that if it goes much beyond that, which I don't know until I look through the entire file or at least to the 262 hearing, that it may be—I may be limited in terms of what I am able to take judicial notice of as far as a fact or disputed fact.

Mother's attorney added that although the trial court could take judicial notice of its file, it could not take judicial notice "of the facts contained within the file." The court said, "[P]oint taken as to the scope. That's pretty close to what I had gleaned."[4]

---

[4] The trial court seems to have correctly concluded that it could take judicial notice of its own orders and records, *see In re R.S.D.*, 446 S.W.3d 816, 820 n.4 (Tex. App.—San Antonio 2014, no pet.) ("a court may take judicial notice that a pleading has been filed in the case, that it has signed an order, or of the law of another jurisdiction"); *In re J.E.H.*, 384 S.W.3d 864, 870

The trial court later signed a final decree of termination, finding that termination was in Ella's best interest and that both Mother and Father had failed to comply with a court order specifying the actions necessary to regain custody of Ella, who had been in the Department's conservatorship for at least nine months after her removal for abuse or neglect. *See* Tex. Fam. Code § 161.001(b)(1)(O), (2). Both parents challenge the court's findings of best interest and statutory grounds.

## STANDARD OF REVIEW

"Parental rights are 'far more precious than any property right,' and when the State initiates a termination proceeding, 'it seeks not merely to infringe that fundamental liberty interest, but to end it.'" *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). The Department therefore must overcome the "strong presumption that the best interest of a child is served by keeping the child with a parent," *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citing Tex. Fam. Code § 153.131(b)), and "[w]e carefully scrutinize termination proceedings," *E.R.*, 385 S.W.3d at 563. Nonetheless, "[t]he strong presumption that a child's best interest is served by keeping the child with his or her biological parents disappears when confronted with evidence to the contrary." *Aguilar v. Foy*,

---

(Tex. App.—San Antonio 2012, no pet.) (trial court may "take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed"), but not of the truth of allegations in those records, *see Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ). Thus, the trial court could take judicial notice of its orders, including those requiring certain actions by the parents, but not of the factual allegations made by the Department or CASA. *See R.S.D.*, 446 S.W.3d at 820 n.4; *J.E.H.*, 384 S.W.3d at 870; *Tschirhart*, 876 S.W.2d at 508. Nor could the court consider evidence that might have been heard in earlier hearings. *See In re D.L.W.W.*, 617 S.W.3d 64, 91–92 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see also In re E.W.*, 494 S.W.3d 287, 296–97 (Tex. App.—Texarkana 2015, no pet.) (trial court may not take judicial notice of testimony in earlier hearings or trials unless transcripts are admitted into evidence).

No. 03-10-00678-CV, 2012 WL 677497, at *8 (Tex. App.—Austin Mar. 1, 2012, no pet.) (mem. op.).

To terminate a parent's rights, the Department must establish by clear and convincing evidence (1) that the parent engaged in conduct that amounts to at least one statutory ground for termination and (2) that termination is in the child's best interest. Tex. Fam. Code § 161.001(b); *In re J.W.*, 645 S.W.3d 726, 740–41 (Tex. 2022). "[C]onjecture or a preponderance of evidence is not enough." *In re D.L.W.W.*, 617 S.W.3d 64, 91–92 (Tex. App.— Houston [1st Dist.] 2020, no pet.) (citing *In re E.N.C.*, 384 S.W.3d 796, 808–10 (Tex. 2012)). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). The distinction between legal and factual sufficiency "lies in the extent to which disputed evidence contrary to a finding may be considered." *A.C.*, 560 S.W.3d at 630. In reviewing legal sufficiency, we view the evidence in the light most favorable to the factfinder's determination, including undisputed contrary evidence, and assume the factfinder resolved disputed facts in favor of its finding. *Id.* at 630–31. In reviewing factual sufficiency, we weigh the favorable evidence against disputed evidence and ask whether the evidence "a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* We must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

9

## DISCUSSION

*Evidentiary Issues*

Father objected when Schroeder was asked to testify about the court orders setting out the actions required of Father: "The order is the evidence of what the Court ordered, not this witness. This would be hearsay of what the Court ordered." The trial court allowed Schroeder to testify about "what he thinks [the order] was." Mother and Father later objected to Schroeder's testimony about the case before his assignment. Father objected "to this witness giving just blanket testimony. I previously objected to hearsay on the orders, but his—his whole testimony is nothing but hearsay." Mother joined that objection and added that "because we're talking about the—the content of the department records, those department records need to be entered before the caseworker can discuss them." *See* Tex. R. Evid. 1002. The Department was permitted to "go back and lay a more proper foundation for Mr. Schroeder to be able to testify to the entirety of this case" by asking Schroeder about Impact and the Department's policies about what information is entered into Impact and how cases are passed between caseworkers. After hearing those explanations, the trial court overruled Father's and Mother's objections "because the witness is testifying as a corporate representative, not as a traditional witness." The Department also noted that Schroeder was "not testifying to what is written in Impact, as—as that would be hearsay, but more his personal knowledge of the case throughout his time working with the department and being the department representative for this case." Father asked for a running objection, which the court granted.

On appeal, Father argues that the trial court abused its discretion in admitting Schroeder's testimony because it was based not on personal knowledge but on Department

records that were not introduced into evidence.[5]  However, we cannot hold that the trial court abused its discretion in deciding that Schroeder, a Department representative who had familiarized himself with the records in the case and who explained what information is contained in the Department's records and how it comes to be in the file, could testify about the facts that occurred before his assignment.  *See In re J.F.C.*, 96 S.W.3d 256, 285 (Tex. 2002); *In re E.A.K.*, 192 S.W.3d 133, 140 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see, e.g.*, *In re E.C.S.*, No. 14-19-00039-CV, 2019 WL 2589943, at *7 (Tex. App.—Houston [14th Dist.] June 25, 2019, no pet.) (mem. op.) ("Melissa Brod, a supervisor with the Department, testified as the Department's representative.  One of the caseworkers who worked on the case, Brandy Matthews, was unavailable for trial.  Brod was familiar with the records in this case and had participated personally."); *In re N.C.H.-M.*, No. 04-18-00098-CV, 2018 WL 3747744, at *1 (Tex. App.—San Antonio Aug. 8, 2018, pet. denied) (mem. op.) (caseworker was asked what had caused children to come into Department's care, and Father lodged hearsay objection; court of appeals held that trial court could have concluded that testimony was not inadmissible hearsay because caseworker had knowledge of case, did not relay out-of-court statement, and explained what caused Department's involvement with family). We thus overrule Father's complaints related to the trial court's ruling that Schroeder could testify about information he learned about the case from the Department's records in Impact.

---

[5]  Father raises the same complaint as to Kelso, but although the parents objected on hearsay and best-evidence grounds when Kelso was asked about CASA's attempts to contact the parents, the Department withdrew that question, and the parents did not object again.

11

*Statutory Grounds*

Both parents challenge the sufficiency of the evidence showing that Ella was removed for abuse or neglect so as to support the trial court's finding of statutory grounds under Subsection O. Father also argues that the evidence is insufficient to show that he failed to comply with a court order.

Abuse or neglect under Subsection O "necessarily includes the risks or threats of the environment in which the child is placed"—it is not necessary that a child actually suffer physical or emotional harm, and the Department may seek conservatorship upon a showing that a child is at risk of abuse or neglect if left in a parent's care. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) ("So while subsection O requires removal under chapter 262 for abuse or neglect, those words are used broadly."). The supreme court has instructed us that when we are considering whether the trial court determined that removal was justified due to a risk of abuse or neglect, we should consider trial-court orders and should even consider affidavits of removal, "even if not evidence for all purposes." *Id*. at 248–49.

Schroeder and Kelso both testified without objection that Ella was removed due to domestic violence, with Kelso noting that Father's abusive behavior toward Mother placed Ella in jeopardy, and with Schroeder stating that the domestic violence was "extreme" and occurred nine times in a four-month span. Schroeder also explained that ongoing domestic violence affects a child emotionally and developmentally. Moreover, Schroeder testified that the Department was concerned at the beginning of the case that Mother was not acting as a protective parent because she continued to have contact with Father despite being cautioned not to and that the parents had not alleviated those concerns. The trial court's Temporary Order

12

Following Adversary Hearing awarded the Department temporary managing conservatorship and included a finding that:

> there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a *danger to the physical health or safety* of [Ella] which was caused by an act or failure to act of the [parents] from whom [Ella was] removed. The Court further finds that it is contrary to the welfare of [Ella] to remain in the home of [Mother] or of [Father], and; (2) the *urgent need for protection* required the immediate removal of [Ella] and reasonable efforts consistent with the circumstances and providing for the safety of [Ella] were made to eliminate or prevent the removal of [Ella]; and (3) reasonable efforts have been made to enable [Ella] to return home to [Mother] or [Father], but there is a *substantial risk of a continuing danger* if [Ella is] returned home to [Mother] or [Father].

(Emphases added.) In later permanency-hearing orders, the court found that the parents had "not made the progress necessary to alleviate the causes that necessitated placement of [Ella] outside of the home; and that it is therefore not in the best interest of [Ella] to return to the home at this time."

Thus, when we consider the testimony by Schroeder and Kelso, combined with the trial court's orders and the affidavit of removal—a document that we will consider only in this limited inquiry as to why the trial court ordered the child's removal—we hold that although it is a close question, the evidence is legally and factually sufficient to support a finding that the trial court ordered Ella removed for abuse or neglect. *See id.*; *T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 WL 4692471, at *8–9 (Tex. App.—Austin Oct. 8, 2021, pet. denied) (mem. op.).

As for the evidence of Father's failure to comply with the court's order, Schroeder testified that Father had only completed two drug tests and a psychological evaluation, that he had missed numerous drug tests, and that the parents had "not fully engaged in any of those services provided to them." In addition, Schroeder testified that Father tested positive on two

drug tests. *See In re J.Q.J.*, No. 01-18-01094-CV, 2019 WL 2292991, at *7 (Tex. App.—Houston [1st Dist.] May 30, 2019, no pet.) (mem. op.) (including missed drug tests in recitation of evidence of failure to comply with court order); *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A parent's failure to complete one requirement of her [family service plan] supports termination under subsection (O)."). Further, the trial court's permanency-hearing orders recited that the parents had not made sufficient progress to obtain Ella's return. Although the evidence presented in this case meets only the bare minimum, we hold, given Schroeder's outright statement that neither parent had complied with the requirements placed upon them, that the evidence is legally and factually sufficient to support a finding of statutory grounds under Subsection O.

*Best Interest*

Finally, we turn to the parents' challenge to the sufficiency of the evidence supporting the trial court's finding that termination is in Ella's best interest.

We review a trial court's best-interest determination in light of the considerations set out in *Holley v. Adams*, taking into account the child's wishes, their emotional and physical needs now and in the future, present and future emotional or physical danger posed to the child, the parenting skills of those seeking custody, any programs available to assist those seeking custody to promote the child's best interest, plans for the child's future, the stability of the home or proposed placement, conduct by the parent that might show that the parent-child relationship is inappropriate, and any excuses for the parent's conduct. 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors are not exhaustive, they need not all be proved, and a lack of evidence about some of the factors does not "preclude a factfinder from reasonably forming a strong conviction

14

or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). However, the "presence of scant evidence relevant to each factor will not support such a finding." *In re A.W.*, 444 S.W.3d 690, 693 (Tex. App.—Dallas 2014, pet. denied) (citing *C.H.*, 89 S.W.3d at 27). Further, a lack of evidence contradicting a finding cannot be viewed as "if it were evidence supporting the finding" and "does not constitute clear and convincing evidence." *E.N.C.*, 384 S.W.3d at 808.

The Department presented evidence that Ella was happy in her foster home, doing well and developing appropriately, and bonded to the family, which hoped to adopt her, and that the Department's plan for Ella was unrelated adoption. That evidence weighs in favor of the trial court's finding that termination is in Ella's best interest. *See C.F. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00250-CV, 2021 WL 5018839, at *8 (Tex. App.—Austin Oct. 29, 2021, pet. denied) (mem. op.) (when child is too young to express wishes, courts may consider evidence that she is bonded with and loved by foster family); *L.R. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-18-00125-CV, 2018 WL 3059959, at *1 (Tex. App.—Austin June 21, 2018, no pet.) (mem. op.) (child's need for permanence is paramount consideration when determining present and future physical and emotional needs). Further, there was evidence that domestic violence had occurred between the parents and that the violence posed a danger to Ella. Schroeder also testified that both parents missed multiple drug tests, that they both tested positive twice, that neither completed their services, that the parents did not visit regularly, and that they had not visited Ella in several months. Finally, Father left the trial early, and Mother did not attend, although it is not clear why she was not present, and a parent's failure to attend the final hearing may support a finding that termination is in the child's best interest. *See In re*

15

*A.J.D.-J.*, No. 01-22-00724-CV, __ S.W.3d __, 2023 WL 2655736, at *8 (Tex. App.—Houston [1st Dist.] Mar. 28, 2023, no pet. h.) (parent's unexcused failure to attend trial and other hearings is circumstance from which factfinder could infer that parent was indifferent to outcome of trial and to their parental rights and responsibilities). We thus hold that the evidence is legally sufficient to support the trial court's finding of best interest.

We cannot, however, hold that the evidence is factually sufficient to support that finding. The Department did not present any evidence about the alleged violence between the parents beyond the cursory testimony noted above. Both Kelso and Schroeder referenced repeated instances of violence but neither provided any details, nor did the Department call any law enforcement or other witnesses or provide other evidence to explain or substantiate its allegations of violence. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection."). Schroeder testified that the Department sought to remove Ella because of its belief that Mother was not being a protective parent by continuing to have a relationship with Father, but beyond his statement that the parents had been involved in domestic violence he described as "extreme" without elaboration, he did not provide any explanation of his concerns. Neither Kelso nor Schroeder testified about whether Ella was ever present during the domestic violence, much less whether she had been at risk of injury or other harm, beyond Schroder's general statement that ongoing domestic violence can harm a child emotionally and developmentally. Thus, although we have held that the evidence supports a finding that Ella was removed due to concerns that she was at risk of abuse or neglect, it does not rise to the level of clear and convincing evidence that Mother or Father actually posed a danger to Ella's

16

well-being.[6] *See In re A.L.H.*, 468 S.W.3d 738, 746–47 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (caseworker "did not present any factual bases to support her conclusory testimony. Unsupported, conclusory opinions of a witness do not constitute evidence of probative force."); *see also In re A.L.R.*, No. 04-19-00349-CV, 2019 WL 5765793, at *5 (Tex. App.—San Antonio Nov. 6, 2019, no pet.) (mem. op.) (testimony that home was "a very clear danger" because another child had died while living there was "wholly conclusory" because no factual evidence was presented to show that home was dangerous or that parents had negligently supervised child who died; record did not show that home study or other parenting evaluation was ever done, nor was there evidence presented about parents' living conditions, parenting abilities, or financial means).

When seeking to terminate a parent's rights, the Department "must meet the heightened burden to prove, by clear and convincing evidence, that the parent should no longer have any relationship with [their] children whatsoever"—it is not enough to prove that a parent should not have custody. *In re M.A.J.*, 612 S.W.3d 398, 409–10 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Importantly, "[a] lack of evidence does not constitute clear and convincing evidence," *E.N.C.*, 384 S.W.3d at 808, and "[t]ermination is not warranted 'without the most solid and substantial reasons,'" *M.A.J.*, 612 S.W.3d at 409–10 (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)). In this case, the Department did not proffer evidence showing that the parents' relationships with Ella were inappropriate, nor did it provide any

---

[6] We note that the Department's burden of proof when seeking conservatorship is significantly lower than its burden of proof when seeking to terminate parental rights. *Compare* Tex. Fam. Code §§ 262.101, .105, .201 (trial court may order child removed upon showing of "sufficient evidence to satisfy a person of ordinary prudence and caution" that child is at risk of harm), *with id.* § 161.001(b) (trial court may not order parental rights terminated unless it finds clear and convincing evidence of statutory grounds and best interest).

evidence about the parents' abilities to meet Ella's emotional and physical needs now and in the future, their parenting skills, any programs available to help them promote the child's best interest, their plans for the child's future, or the stability of their employment or homes—although there was evidence that both Mother and Father (at least until his arrest) were employed. *See Holley*, 544 S.W.2d at 371–72. The Department presented little evidence and no details about the circumstances giving rise to the child's removal, and the scant evidence about the domestic violence between the parents—the brief statements that violence occurred between them—does not establish that termination was in Ella's best interest. And the Department provided even less evidence about the parents' conduct since Ella's removal.

The Department notes that neither Mother nor Father testified, asserting that Mother "did not avail herself to be called to testify by the Department." "[W]hen a parent, who is a key fact witness in a termination case, refuses to attend trial, the record will necessarily be more limited than if he or she had testified." *A.J.D.-J.*, __ S.W.3d __, 2023 WL 2655736, at *10. Even if a parent refuses to attend, however, "this circumstance does not relieve the Department of the burden of proof or lower the burden of proof, but it may explain in a given case why the record is limited and why such a limited record does not ineluctably signal evidentiary insufficiency." *Id.* In this case, the record does not reflect that the Department had attempted to call either of the parents as witnesses. Nor is it clear from the record whether Mother chose not to access the Zoom hearing or whether she had technical difficulties accessing the hearing. On this record, therefore, the fact that the parents did not testify cannot weigh with any significance in favor of termination.

Further, until the Department proved by clear and convincing evidence that termination was in Ella's best interest, it was not the parents' burden to rebut the Department's

18

allegations. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.). In *A.H.*, the Department conceded that the evidence on best interest was "limited" but argued that it was sufficient because the parent did not contradict the caseworker's testimony or show that termination was not in the children's best interest, but our sister court held that "due process and the Texas Family Code place the burden of proof on the Department to prove the necessary elements by the heightened burden of 'clear and convincing evidence,'" and thus the caseworker's conclusory testimony, even uncontradicted, did "not amount to more than a scintilla of evidence." *Id.*

Because of the strong presumption that a child's best interest is served by maintaining the parent-child relationship, we strictly scrutinize termination proceedings in favor of the parent, *M.A.J.*, 612 S.W.3d at 409–10, bearing in mind that the presumption in favor of the parents "disappears when confronted with evidence to the contrary," *Aguilar*, 2012 WL 677497, at *8. And although evidence of every *Holley* factor is not required and evidence of statutory grounds may also indicate that termination is in the child's best interest, such evidence does not relieve the Department of its burden of proving best interest. *See C.H.*, 89 S.W.3d at 28. In this case, the Department presented little evidence beyond showing that Ella was with a foster family that was meeting her needs and hoped to adopt her and with whom she had bonded, and the best-interest standard does not allow for termination simply because the child might be better off living with another family. *C.C. v. Texas Dep't of Fam. & Protective Servs.*, 653 S.W.3d 204, 217 (Tex. App.—Austin 2022, no pet.); *D.L.W.W.*, 617 S.W.3d at 81.

Applying the clear-and-convincing standard and considering all the evidence—as well as the lack of evidence of many relevant issues—we hold that the Department failed to carry its burden of providing factually sufficient evidence to support a finding that it was in Ella's best

interests to terminate Mother's and Father's parental rights. *See In re E.W.*, 494 S.W.3d 287, 300–01 (Tex. App.—Texarkana 2015, no pet.). As the *E.W.* court explained:

> The evidence before the trial court at the final hearing amounted to little more than a recitation that [the child] was in foster care, that his needs were being met, that he had bonded with the foster family, and that the foster family wanted to adopt him. Even if a parent's behavior "may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere."

*Id.* (quoting *A.H.*, 414 S.W.3d at 807)); *see also A.H.*, 414 S.W.3d at 807 ("[C]onclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence[, a]nd, '[a]lthough [a parent's] behavior may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.'").

## CONCLUSION

We have held that the evidence is legally and factually sufficient to support the trial court's finding of statutory grounds and legally sufficient to support the best-interest finding. However, the Department did not provide factually sufficient evidence to show that termination is in Ella's best interest. We therefore reverse the trial court's termination decree and remand the cause for further proceedings.[7] *See* Tex. R. App. P. 28.4(c) (if appellate court reverses and remands parental-termination case for new trial, new trial must be commenced within 180 days after appellate court's mandate issues).

---

[7] Because the parents do not contest the Department's conservatorship, our reversal of the decree does not affect the conservatorship appointment. *In re J.A.J.*, 243 S.W.3d 611, 612–13 (Tex. 2007); *E.W.*, 494 S.W.3d at 302.

20

_____

                    Edward Smith, Justice

Before Justices Baker, Smith, and Jones*

Reversed and Remanded

Filed:   May 18, 2023

* Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

21